John W. Howard (SBN 80200)
Scott J. Street (SBN 258962)
Michelle D. Volk (SBN 217151)
Peter C. Shelling (SBN 351159)
**JW HOWARD/ATTORNEYS, LTD.**
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: (619) 234-2842
Email: johnh@jwhowardattorneys.com
sstreet@jwhowardattorneys.com
michelle@jwhowardattorneys.com
pshelling@jwhowardattorneys.com

R. Trent McCotter
**BOYDEN GRAY PLLC**
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202-706-5488
Email: tmccotter@boydengray.com

Daniel Z. Epstein
**AMERICA FIRST LEGAL FOUNDATION**
611 Pennsylvania Ave. SE #231
Washington, DC 20003
202-964-3721
Email: daniel.epstein@aflegal.org

Attorneys for Amicus Curiae America First Legal Foundation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants. | Case No.: 3:25-cv-03372-JSC <br> [Assigned to the Hon. Jacqueline Scott Corley] <br><br> **BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................3
IDENTITY AND INTEREST OF THE *AMICUS CURIAE* ....................................................5
INTRODUCTION ..............................................................................................................5
ARGUMENT .....................................................................................................................6
CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Block v. Neal*,
  460 U.S. 289 (1983) ............................................................................................. 8

*Dolan v. U.S. Postal Serv.*,
  546 U.S. 481 (2006) ............................................................................................. 8

*Earth Island Inst. v. Christopher*,
  6 F.3d 648 (9th Cir. 1993) ................................................................................. 11

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ........................................................................................ 6, 11

*Int'l Lab. Rts. Educ. & Rsch. Fund v. Bush*,
  954 F.2d 745 (D.C. Cir. 1992) .................................................................. 6, 10, 11

*Int'l Lab. Rts. Fund v. Bush*,
  357 F. Supp. 2d 204 (D.D.C. 2004) ................................................................... 11

*K Mart Corp. v. Cartier, Inc.*,
  485 U.S. 176 (1988) ................................................................................... 5, 9, 12

*Kosak v. United States*,
  465 U.S. 848 (1984) ............................................................................................. 8

*Lane v. Pena*,
  518 U.S. 187 (1996) ............................................................................................. 8

*Metz v. United States*,
  788 F.2d 1528 (11th Cir. 1986) ................................................................... 7, 8, 9

*Regan v. Wald*,
  468 U.S. 222 (1984) ............................................................................................. 9

*United States v. Gonzales*,
  520 U.S. 1 (1997) ................................................................................................. 8

*United States v. Shearer*,
  473 U.S. 52 (1985) ............................................................................................... 9

*United States v. Universal Fruits & Vegetables Corp.*,
  370 F.3d 829 (9th Cir. 2004) ............................................................................... 7

*Wilkins v. United States*,
  598 U.S. 152 (2023) ........................................................................................... 11

**Statutes**

28 U.S.C. § 610 ............................................................................................................... 13
28 U.S.C. § 1337 ............................................................................................................. 11
28 U.S.C. § 1581 ...................................................................................................6, 7, 8, 11
28 U.S.C. § 1585 ............................................................................................................. 13
28 U.S.C. § 1631 ............................................................................................................. 13
50 U.S.C. § 1701 ..........................................................................................................7, 10
50 U.S.C. § 1702 ............................................................................................................... 6

JW HOWARD/ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. As part of *Amicus*'s commitment to the rule of law, it seeks to ensure that principles of jurisdiction are strictly enforced.

## INTRODUCTION

The government has moved to transfer this case to the Court of International Trade, which has exclusive jurisdiction over cases arising from statutes that authorize certain tariffs, duties, embargoes, or other similar acts. This regime ensures that the nation's judiciary speaks with one voice on those important matters of international trade. *See K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 187–88 (1988).

As explained below, *Amicus* provides this Court with another basis for transfer to the Court of International Trade, which is already entertaining a lawsuit against tariffs imposed under the same statute. *See V.O.S. Selections, Inc. v. Trump*, No. 1:25-cv-66 (Ct. Int'l Trade).

---

[1] The undersigned certifies that no party's counsel authored this brief in whole or in part, and that no party, party's counsel, or any other person other than *Amicus* contributed money that was intended to fund preparing or submitting this brief.

BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION
IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER

Case No.: 3:25-cv-03372-JSC

# ARGUMENT

This case arises out of the International Emergency Economic Powers Act (IEEPA), which does not expressly provide a cause of action[2] and thus does not state which court has jurisdiction over civil actions arising out of it. Even assuming a cause of action does exist for challenging the President's invocation of IEEPA, such a case would belong in the Court of International Trade because of a separate statutory provision addressing that Court's jurisdiction.

Section 1581(i) of Title 28—which has been labeled a "broad jurisdictional grant"[3]—says that the Court of International Trade "shall have exclusive jurisdiction" over "any civil action commenced against" the federal government where the action "arises out of any law of the United States providing for," *inter alia*, "embargoes … for reasons other than the protection of the public health or safety." 28 U.S.C. § 1581(i)(1), (i)(1)(C). That imposes a form of categorical approach: if the civil action arises out of a statute providing for embargoes on certain bases, then the action can be heard only in the Court of International Trade. That ensures jurisdiction can be determined quickly. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("[A]dministrative simplicity is a major virtue in a jurisdictional statute.").

---

[2] One provision implies that IEEPA itself provides no such review. *See* 50 U.S.C. § 1702(c) ("This subsection does not confer or imply any right to judicial review.").

[3] *Int'l Lab. Rts. Educ. & Rsch. Fund v. Bush*, 954 F.2d 745, 747 (D.C. Cir. 1992) (Henderson, J., concurring).

BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION   Case No.: 3:25-cv-03372-JSC
IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER

IEEPA provides for (among many other things) embargoes to protect the "economy of the United States." 50 U.S.C. § 1701(a). Because that means IEEPA provides for embargoes for a reason other than public health and safety, and because Plaintiffs' civil action arises from IEEPA, each requirement of § 1581(i)(1) is satisfied, as explained below.

Even if there were a doubt, however, the Court should still transfer because any perceived "conflicts" between the Court of International Trade's "exclusive … jurisdiction and the broad jurisdiction of the district courts should be resolved by upholding the exclusivity of the [Court of International Trade's] jurisdiction." *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 833 n.7 (9th Cir. 2004).

***Civil Action Against the Federal Government.*** There can be no dispute this is a "civil action commenced against the United States, its agencies, or its officers." 28 U.S.C. § 1581(i)(1). Plaintiffs name President Trump and several other federal officials (in their official capacities) and agencies as Defendants.

***Arises Out of IEEPA.*** This civil action also "arises out of" IEEPA. *Id.* Section 1581(i) does not say that the "civil action" must be *provided for* or *authorized by* the relevant law (i.e., IEEPA). Rather, Congress used the broader term "arising out of" to indicate a looser causal connection.

The "Supreme Court … has indicated that the phrase 'arising out of' should be broadly construed" in the context of federal statutes. *Metz v. United States*, 788 F.2d

1528, 1533 (11th Cir. 1986). A natural meaning of "arising out of it" is that something is "associated in any way with" something else. *Id.* (quoting *Kosak v. United States*, 465 U.S. 848, 854 (1984)). At the very most, something can be said to arise out of specific "underlying governmental conduct" when the conduct is "'essential' to plaintiff's claim." *Id.* at 1534 (quoting *Block v. Neal*, 460 U.S. 289, 297 (1983)). Further, Congress twice used the word "any" in § 1581(i) (i.e., "any civil action" and "any law") to re-emphasize this broadness. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").[4]

This action "aris[es] out of" IEEPA because that law is "associated in any way with" and is "essential" to this civil action, given that the Complaint is entirely premised on IEEPA, its scope, and its use by the President, which prompted this suit. *See Metz*, 788 F.2d at 1533–34.

It makes no difference that Plaintiffs' suit is framed as bringing an *ultra vires* equitable claim and a "separation of powers" claim. A plaintiff's choice of a particular cause of action cannot let it escape the broad language in § 1581(i)(1), or else the Court of International Trade's exclusive jurisdiction could be easily skirted. The

---

[4] Although cases like *Metz* and *Kosak* arose in the context of the Federal Tort Claims Act, the Supreme Court has made clear that its interpretation of the phrase "arising out of" in those cases did "not implicate the general rule that 'a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). In other words, the Court held that the phrase "arising out of" is naturally broad, even without a thumb on the scale.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

Supreme Court has held, for example, that a plaintiff cannot evade a statutory bar on claims "*arising out of* assault or battery" simply "by framing her complaint in terms of negligent failure to prevent the assault and battery," because the statute "does not merely bar claims *for* assault or battery" but rather "in sweeping language it excludes any claim *arising out of* assault or battery." *United States v. Shearer*, 473 U.S. 52, 55 (1985) (emphases in original).

Likewise here, all that matters for this element is whether, under the statute's "sweeping language," this civil action arises out of IEEPA. *Id.* It does, as explained above, because this entire suit is premised on IEEPA and the President's invocation of that law. *See Metz*, 788 F.2d at 1533–34.

***IEEPA Provides for Embargoes on Non-Public-Health-and-Safety Grounds.*** The only remaining inquiry is whether IEEPA provides for "embargoes … for reasons other than the protection of the public health or safety." 28 U.S.C. § 1581(i)(1)(C).

IEEPA has long been recognized as providing for embargoes. *See, e.g.*, *Regan v. Wald*, 468 U.S. 222, 225–28 (1984) (holding that IEEPA and the Trading with the Enemy Act both gave the President "essentially the same" powers, including "broad authority to impose comprehensive embargoes on foreign countries").[5] And that embargo power can be triggered on the grounds of protecting the "economy of the

---

[5] The Supreme Court has held that § 1581(i) uses "the ordinary meaning of the word 'embargoes,'" which are "government order[s] prohibiting commercial trade with individuals or businesses of other nations," or "a policy which prevents goods from entering a nation and which may be imposed on a product or on an individual country." *K Mart*, 485 U.S. at 184 (cleaned up).

United States." 50 U.S.C. § 1701(a). That is certainly not a "public health and safety" ground. *See K Mart*, 485 U.S. at 184 (distinguishing embargoes based on "trade policy" from embargoes based on "public health" or "safety" grounds, which addressed things like adulterated foods or vehicles that do not conform to federal safety standards).

Taken together, this means IEEPA provides for embargoes for reasons other than the protection of the public health and safety—and thus satisfies the final requirement under § 1581(i)(1).

To be clear, § 1581(i)(1)(C) does not say that the relevant law must provide for embargoes *exclusively* "for reasons other than the protection of the public health or safety." Rather, so long as IEEPA affirmatively authorizes an embargo for any reason other than public health and safety, that is sufficient. It is irrelevant whether IEEPA might *also* provide for embargoes on public health and safety grounds. *See Int'l Lab. Rts. Educ. & Rsch. Fund*, 954 F.2d at 747 (Henderson, J., concurring) ("The phrase 'providing for' [in § 1581] has a broader meaning than the simple verb 'provide' and can be construed to mean 'relating to,' as the Supreme Court has done in considering this very provision.").

Also note that this element of § 1581(i) does not ask what kind of claim the plaintiff brings, or how the relevant law was invoked in this particular challenge. The statute imposes a form of categorical approach: if IEEPA provides for certain types of

embargoes (and it does), then it satisfies this requirement. Thus, as other courts have held, the inquiry is "whether that law (rather than the specific claims set forth by the plaintiff) provides for an embargo." *Int'l Lab. Rts. Fund v. Bush*, 357 F. Supp. 2d 204, 209 n.3 (D.D.C. 2004).

That is by design to ensure that the question of jurisdiction is straightforward, largely based on the nature of the statute at issue, rather than disputed parsing of specific claims or arguments. "[A]dministrative simplicity is a major virtue in a jurisdictional statute." *Hertz*, 559 U.S. at 94.

Because all requirements of § 1581(i)(1) are met, the Court of International Trade has "exclusive jurisdiction" over Plaintiffs' challenge. 28 U.S.C. § 1581(i); *see also* 28 U.S.C. § 1337(c) (U.S. District Courts lack jurisdiction over all cases in the province of the Court of International Trade).

\* \* \*

Plaintiffs may argue that prior civil suits arising out of IEEPA were not brought exclusively in the Court of International Trade. But it appears none of those cases addressed how § 1581(i)(1) applies to IEEPA, so there is not even a "drive-by jurisdictional ruling" on the matter. *Wilkins v. United States*, 598 U.S. 152, 160 (2023) (cleaned up). More to the point, § 1581(i) was added only in 1980 and was designed to "expand[] the jurisdiction of the CIT beyond that of the earlier Customs Court." *Earth Island Inst. v. Christopher*, 6 F.3d 648, 651 (9th Cir. 1993). The work done by

11
BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION                  Case No.: 3:25-cv-03372-JSC
IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER

the Court of International Trade is important, but its jurisdictional scope is hardly well known, and it should not be surprising that some parties in IEEPA cases have either not recognized how § 1581(i) applies to IEEPA, or have chosen not to press the matter.

Channeling such suits to the Court of International Trade makes perfect sense: it ensures a single trial-level court hears challenges to civil suits arising out of statutes related to certain trade actions that are national—really, international—in effect. Rather than a multitude of challenges brought in different district courts whenever the President invokes such a law, with each court potentially reaching contradictory determinations, there will instead be a single court reaching a single determination. That concern is not hypothetical. There is already another suit filed in a different District Court challenging the President's invocation of IEEPA. *See Webber v. U.S. Dep't of Homeland Security*, No. 4:25-cv-26 (D. Mont.). And more will likely come.

The Supreme Court itself has recognized that Congress "enacted the jurisdictional provision" at § 1581 "first and foremost, to remedy the confusion over the division of jurisdiction between the Customs Court (now the Court of International Trade) and the district courts and to '*ensure ... uniformity in the judicial decisionmaking process*.'" *K Mart*, 485 U.S. at 187–88 (emphasis added). Further, the Court of International Trade is more than capable of resolving such disputes, as Congress has given it the same powers in law and equity as a U.S. District Court. 28

U.S.C. § 1585. Indeed, the Court of International Trade is already entertaining at least one other suit challenging tariffs issued under IEEPA. *See V.O.S. Selections, Inc. v. Trump*, No. 1:25-cv-66 (Ct. Int'l Trade).

## CONCLUSION

The Court should transfer this civil action to the Court of International Trade. *See* 28 U.S.C. § 1631 (jurisdiction-transfer statute incorporating definition of courts from 28 U.S.C. § 610, which expressly lists "the Court of International Trade"). RESPECTFULLY SUBMITTED.

DATED: April 23, 2025            **JW HOWARD │ ATTORNEYS, LTD.**

By: /s/ *Scott J. Street*
John W. Howard
Scott J. Street
Michelle D. Volk
Peter C. Shelling

**BOYDEN GRAY PLLC**
R. Trent McCotter

**AMERICAN FIRST LEGAL FOUNDATION**
Daniel Z. Epstein

Attorneys for Amicus Curiae America First Legal Foundation

# CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On April 23, 2025, I electronically filed the **BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER** and served the documents using the Court's Electronic CM/ECF Service which will send electronic notification of such filing to all registered counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 23, 2025 at San Diego, California.

*/s/ Dayna Dang*
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com