YAAKOV M. ROTH
Acting Assistant Attorney General
ERIC J. HAMILTON
Deputy Assistant Attorney General
PATRICIA M. McCARTHY
Director, National Courts
CLAUDIA BURKE
Deputy Director, National Courts
JUSTIN R. MILLER
Attorney-In-Charge, International Trade Field Office
LUKE MATHERS
Trial Attorney

       U.S. Department of Justice
       Civil Division
       Commercial Litigation Branch
       26 Federal Plaza, Suite 346
       New York, New York 10278
       Telephone: (212) 264-9236
       luke.mathers@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA and GAVIN NEWSOM, in his official capacity as Governor of California,<br><br>      Plaintiffs,<br><br>  v.<br><br>DONALD J. TRUMP, et al.,<br><br>      Defendants. | Case No. 3:25-cv-03372-JSC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER TO THE U.S. COURT OF INTERNATIONAL TRADE**<br><br>Date:    May 22, 2025<br>Time:    10:00 a.m. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I.    The Court Of International Trade Has Exclusive Jurisdiction Over This Case................. 1

    A.    28 U.S.C. § 1581(i) Divests This Court Of Jurisdiction.............................................. 2

    B.    Precedent Confirms That This Action Belongs In The Court Of International Trade ... 4

    C.    At A Minimum, The Court Of International Trade Should Resolve Any Questions About Its Jurisdiction.................................................................................................... 5

    II.    Plaintiffs' Inappropriate Discussion Of The Merits Does Not Undermine Transfer ......... 7

CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998)..............................................................................................13

*Bd. of Trs. of Univ. of Ill. v. United States*,
   289 U.S. 48 (1933)..................................................................................................8

*Biden v. Nebraska*,
   600 U.S. 477 (2023)............................................................................................12

*BP P.L.C. v. Mayor of Balt.*,
   141 S. Ct. 1532 (2021)........................................................................................10

*Chemique Pharms, Inc. v. FDIC*,
   No. 09-cv-272, 2010 WL 11596557 (C.D. Cal. Jan. 25, 2010).........................1

*Clark v. Busey*,
   959 F.2d 808 (9th Cir. 1992)................................................................................7

*Commodities Exp. Co. v. U.S. Customs Serv.*,
   957 F.2d 223 (6th Cir. 1992)................................................................................6

*Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*,
   18 F.3d 1581 (Fed. Cir. 1994)..............................................................................6

*Cornet Stores v. Morton*,
   632 F.2d 96 (9th Cir. 1980)..................................................................................4

*Corus Grp. PLC v. ITC*,
   352 F.3d 1351 (Fed. Cir. 2003)............................................................................2

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981)............................................................................................10

*Dep't of Navy v. Egan*,
   484 U.S. 518 (1988)............................................................................................11

*DHS v. MacLean*,
   574 U.S. 383 (2015)..............................................................................................6

*Downes v. Bidwell*,
   182 U.S. 244 (1901)............................................................................................13

*Earth Island Inst. v. Christopher*,
   6 F.3d 648 (9th Cir. 1993)................................................................................4, 5

*Ellet v. Stanislaus*,
    506 F.3d 774 (9th Cir. 2007) ............................................................................ 2

*FAA v. Cooper*,
    566 U.S. 284 (2012) .......................................................................................... 8

*Fed. Energy Admin. v. Algonquin SNG, Inc.*,
    426 U.S. 548 (1976) .......................................................................................... 8

*Florida v. HHS*,
    19 F.4th 1271 (11th Cir. 2021) ....................................................................... 12

*Florsheim Shoe Co., Div. of Interco v. United States*,
    744 F.2d 787 (Fed. Cir. 1984) ........................................................................ 11

*Hose v. INS*,
    180 F.3d 992 (9th Cir. 1999) ............................................................................ 7

*In re Application of the United States*,
    460 F. Supp. 2d 448 (S.D.N.Y. 2006) ............................................................ 10

*In re Gregory*,
    705 F.2d 1118 (9th Cir. 1983) .......................................................................... 3

*Int'l Lab. Rights Educ. & Rsch. Fund v. Bush*,
    954 F.2d 745 (D.C. Cir. 1992) .......................................................................... 2

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ........................................................................................ 13

*K Mart Corp. v. Cartier, Inc.*,
    485 U.S. 176 (1988) ................................................................................. 1, 2, 3

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................... 1

*Marshall Field & Co. v. Clark*,
    143 U.S. 649 (1892) ........................................................................................ 11

*Miller v. French*,
    530 U.S. 327 (2000) ........................................................................................ 13

*Moon v. Freeman*,
    379 F.2d 382 (9th Cir. 1967) .......................................................................... 13

*Orleans Int'l, Inc. v. United States*,
    334 F.3d 1375 (Fed. Cir. 2003) ........................................................................ 6

*Pentax Corp. v. Myrha*,
  72 F.3d 708 (9th Cir. 1995) ............................................................................................ 6, 7

*QBE Syndicate 1036 v. Compass Mins. Louisiana, Inc.*,
  95 F.4th 984 (5th Cir. 2024) ............................................................................................. 13

*Regan v. Wald*,
  468 U.S. 222 (1984) .......................................................................................................... 10

*S. Corp. v. United States*,
  690 F.2d 1368 (Fed. Cir. 1982) .......................................................................................... 8

*Salinas v. United States*,
  522 U.S. 52 (1997) ............................................................................................................ 13

*SCM Corp. v. ITC*,
  549 F.2d 812 (D.C. Cir. 1977) ............................................................................................ 6

*Sebelius v. Auburn Reg'l Med. Ctr.*,
  568 U.S. 145 (2013) ............................................................................................................ 8

*Sec. Pac. Nat. Bank v. Gov't & State of Iran*,
  513 F. Supp. 864 (C.D. Cal. 1981) ................................................................................... 10

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) .......................................................................................................... 11

*TikTok Inc. v. Trump*,
  507 F. Supp. 3d 92 (D.D.C. 2020) .................................................................................... 12

*Totes-Isotoner Corp. v. United States*,
  594 F.3d 1346 (Fed. Cir. 2010) .......................................................................................... 3

*Touby v. United States*,
  500 U.S. 160 (1991) .......................................................................................................... 14

*Transpacific Steel LLC v. United States*,
  4 F.4th 1306 (Fed. Cir. 2021) ............................................................................................. 3

*Trump v. Hawaii*,
  585 U.S. 667 (2018) .......................................................................................................... 11

*United States v. Amirnazmi*,
  645 F.3d 564 (3d Cir. 2011) .............................................................................................. 14

*United States v. Curtiss-Wright Export Corp.*,
  299 U.S. 304 (1936) .......................................................................................................... 14

*United States v. Mazurie,*
    419 U.S. 544 (1975)........................................................................................ 14

*United States v. Shih,*
    73 F.4th 1077 (9th Cir. 2023)....................................................................... 14

*United States v. Spawr Optical Rsch., Inc.,*
    685 F.2d 1076 (9th Cir. 1982)...................................................................... 12

*United States v. U.S. Shoe Corp.,*
    523 U.S. 360 (1998)..................................................................................... 13

*United States v. Universal Fruits & Vegetables Corp.,*
    370 F.3d 829 (9th Cir. 2004)..................................................................... 5, 7

*United States v. Williams,*
    553 U.S. 285 (2008)....................................................................................... 6

*United States v. Yoshida,*
    526 F.2d 560 (C.C.P.A. 1975).............................................................passim

*Utility Air Regulatory Group v. EPA,*
    573 U.S. 302 (2014)............................................................................... 11, 12

*Webber v. DHS,*
    No. 25-cv-26, 2025 WL 1207587 (D. Mont. Apr. 25, 2025).................passim

*West Virginia v. EPA,*
    597 U.S. 697 (2022)............................................................................... 11, 12

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017)..................................................................................... 11

**Constitutional Provisions**

U.S. Const. art. I, § 9, cl. 5........................................................................... 13

**Statutes**

19 U.S.C. § 1862.............................................................................................. 8

28 U.S.C. § 255................................................................................................ 3

28 U.S.C. § 1331.............................................................................................. 2

28 U.S.C. § 1337.............................................................................................. 2

28 U.S.C. § 1581..................................................................................... 2, 3, 5

1

2

50 U.S.C. § 1702 ........................................................................................................ 7, 8

3

**Other Authorities**

4

H.R. Rep. No. 95-459 (1977) ...................................................................................... 10

5

H.R. Rep. No. 96-1235 (1980) ...................................................................................... 2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

"Congress granted the Court of International Trade exclusive jurisdiction over suits relating to tariffs, duties, fees, or other taxes on the importation of merchandise." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988) (cleaned up).  Plaintiffs challenge tariffs imposed under the International Emergency Economic Powers Act (IEEPA) and challenge the administration and enforcement with respect to tariffs by asking for changes to the Harmonized Tariff Schedule.  That challenge falls within the exclusive jurisdiction of the Court of International Trade, and transfer of this action to that court is the only appropriate recourse.  *See Webber v. DHS*, No. 25-cv-26, 2025 WL 1207587, at *6 (D. Mont. Apr. 25, 2025) (transferring case raising a materially indistinguishable IEEPA challenge to the Court of International Trade).  Ninth Circuit precedent requires that result twice over.  First, the Ninth Circuit has held that identical statutory language providing tariff authority (in IEEPA's predecessor statute) was sufficient to give the Court of International Trade's predecessor court exclusive jurisdiction.  Second, the Ninth Circuit requires transfer to the Court of International Trade even if there is doubt about whether that court has jurisdiction.  That is the only possible rule; otherwise, if deciding jurisdiction required a district court to first decide the merits, as plaintiffs contend, the Court of International Trade's exclusive jurisdiction would effectively be destroyed, creating the same risk of inconsistent results that the court was created to avoid.

Plaintiffs spend only three pages responding to defendants' transfer motion.  In opposing transfer, plaintiffs instead address the wrong question by arguing the merits of whether IEEPA authorizes tariffs. ECF No. 12 (Opp.) at 10-23.  Those merits arguments are premature, showcase the unworkability of plaintiffs' merits-first approach to deciding jurisdictional questions, and fail in any event.  Accordingly, the Court should grant defendants' motion and transfer this action to the Court of International Trade.

# ARGUMENT

## I.    The Court Of International Trade Has Exclusive Jurisdiction Over This Case

As in all cases, plaintiffs bear the burden of establishing jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Chemique Pharms, Inc. v. FDIC*, No. 09-cv-272, 2010 WL 11596557, at *2 (C.D. Cal. Jan. 25, 2010) (plaintiffs failed to meet their burden, where a different court possessed

exclusive jurisdiction).  But as plaintiffs acknowledge, when "another statute divests the Court of jurisdiction," the Court may not rely on the general grant of federal question jurisdiction under 28 U.S.C. § 1331.  Opp. 11; *see* 28 U.S.C. § 1337 (divesting district courts of jurisdiction over "any matter within the exclusive jurisdiction of the Court of International Trade").  In such circumstances, there is no concurrent jurisdiction for the district court to exercise.  *Contra* Opp. 25 (erroneously suggesting that the district courts and the Court of International Trade could both entertain challenges to the President's imposition of tariffs under IEEPA).  That is the case here, and "the decision of whether to transfer this matter is not a discretionary one." *Webber*, 2025 WL 1207587, at *6.

### A.     28 U.S.C. § 1581(i) Divests This Court Of Jurisdiction

This Court lacks jurisdiction for two independent reasons.  First, the Court of International Trade has "exclusive jurisdiction" over challenges arising out of "any law of the United States providing for . . . tariffs." 28 U.S.C. § 1581(i)(1)(B); *see* ECF No. 9 (Mot.) at 9-11.[1]  Section 1581(i) is a "broad jurisdictional grant," enacted as an additional and "residual" source of jurisdiction to supplement the more specific provisions of subsections (a) through (h).  H.R. Rep. No. 96-1235 at 47 (1980).  In furtherance of that broad grant, Congress used broad language.  "Providing for," in this context, means "relating to." *K Mart*, 485 U.S. at 188.  The Supreme Court has explained, for example, that section 1581(i) grants the Court of International Trade exclusive jurisdiction over "suits *relating to*" the matters listed in that section. *K Mart*, 485 U.S. at 188 (emphasis added); *see Int'l Lab. Rights Educ. & Rsch. Fund v. Bush*, 954 F.2d 745, 747 (D.C. Cir. 1992) (Henderson, J., concurring) (this "expansive definition" covers claims that "relate to" import duties).  Similarly, with respect to a bankruptcy statute that entitles a debtor to "broad discharge" of debts, the Ninth Circuit has construed the phrase "provide for" to broadly mean "make a provision for," "deal with," or "refer to." *Ellet v. Stanislaus*, 506 F.3d

---

[1] Plaintiffs do not seriously contest that this is a "civil action commenced against the United States, its agencies, or its officers." 28 U.S.C. § 1581(i)(1).  In a footnote, they state that § 1581(i) does not apply to actions against the President, Opp. 10 n.3, but omit that they have named not only the President but also multiple federal agencies and officers as defendants in this action, *see* ECF No. 1 ¶¶ 18-23.  In any event, whether there are other jurisdictional defects to plaintiffs' case is a matter for the Court of International Trade, exercising exclusive jurisdiction over the case, to determine. *See, e.g.*, *Corus Grp. PLC v. ITC*, 352 F.3d 1351, 1357-60 (Fed. Cir. 2003) (confirming the Court of International Trade had jurisdiction in a case asserted against the President because other parties were named as defendants).

774, 777 (9th Cir. 2007); *see In re Gregory*, 705 F.2d 1118, 1122 (9th Cir. 1983) (same). Thus, although plaintiffs observe that the Court of International Trade lacks exclusive jurisdiction over "*every* suit against the Government challenging customs-related laws," Opp. 10 (citing *K Mart*, 485 U.S. at 188), the Supreme Court made clear what the delineation in section 1581(i)(1)(B) means: the exclusive jurisdiction covers "suits relating to tariffs, duties, fees, or other taxes on the importation of merchandise"—just "not if they are for the raising of revenue." *K Mart*, 485 U.S. at 188 (cleaned up).

Plaintiffs' challenge to the imposition of tariffs under IEEPA clearly "relates to" or "deals with" tariffs and falls squarely within the broad "providing for" language in section 1581(i). That IEEPA does not specifically mention tariffs, as plaintiffs argue (Opp. 11-16), simply "has no bearing on whether the Court of International Trade has jurisdiction over a challenge" to the President's authority under the statute. *Webber*, 2025 WL 1207587, at *5.[2]

Second, Congress also vested the Court of International Trade with exclusive jurisdiction over "administration and enforcement with respect to" tariffs. 28 U.S.C. § 1581(i)(1)(D); *see* Mot. 9-11. Plaintiffs contest the applicability of this provision because, they say, it is derivative of section 1581(i)(1)(A)-(C). Opp. 23 n.10. But section 1581(i)(1)(D) by its terms applies to "administration and enforcement *with respect to* the matters *referred to* in . . . subsections (a)–(h) of this section," in addition to the matters addressed under § 1581(i)(1). (Emphases added.) And the very remedy plaintiffs seek is to undo tariffs and enjoin federal agencies and officers "from taking any action to implement or enforce" those tariffs. ECF No. 1, Prayer for Relief. As their complaint recognizes, the tariffs here are being implemented by certain agencies and through the Harmonized Tariff Schedule. *Id.* ¶ 32. That is a quintessential matter for the Court of International Trade under section 1581(i). *See, e.g.*, *Totes-Isotoner*

---

[2] Plaintiffs also briefly argue that Executive orders themselves are not "laws" such that they could give rise to jurisdiction under section 1581(i). Opp. 11 n.4. But Congress has created, through 28 U.S.C. § 255, a mechanism for the Court of International Trade to "hear and determine any civil action" that "raises an issue of the constitutionality of . . . a proclamation of the President or an Executive order," clearly indicating that it intended for that court to review Executive orders within its jurisdiction. The Court of International Trade has in fact heard such cases, including under section 1581(i). *See* Mot. 10. For instance, pursuant to 28 U.S.C. § 255, the Court of International Trade has considered a challenge to a Presidential proclamation in a similar context, considering whether the language "adjust imports" in the underlying statute authorized the imposition of tariffs. *See Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1332-33 & n.5 (Fed. Cir. 2021).

1   *Corp. v. United States*, 594 F.3d 1346, 1350-51 (Fed. Cir. 2010) (importer's challenge to a higher tariff

2   implemented under the Harmonized Tariff Schedule was reviewable by the Court of International Trade

3   under section 1581(i)); *Cornet Stores v. Morton*, 632 F.2d 96 (9th Cir. 1980) (challenge to tariffs

4   imposed under IEEPA's predecessor statute, "fulfilled through the existing scheme for the collection of

5   customs duties," belonged in the Court of International Trade).

6       **B.    Precedent Confirms That This Action Belongs In The Court Of International Trade**

7       As defendants' motion explained, Ninth Circuit precedent requires transfer.  In *Cornet Stores v.*

8   *Morton*, that court held that the Central District of California lacked jurisdiction over a challenge to

9   tariffs imposed under identical statutory language—"regulate . . . importation"—in IEEPA's predecessor

10  statute (the TWEA).  632 F.2d at 97.  Instead, the plaintiffs' claim to recover import surcharges could be

11  brought only before the Customs Court (the Court of International Trade's predecessor), which had

12  "exclusive jurisdiction over customs matters." *Id.* at 98.  The Ninth Circuit was unpersuaded by the

13  "number of instances in which creative arguments have been presented in hopes of avoiding the

14  exclusivity of Customs Court jurisdiction." *Id.*  In fact, at the time the Ninth Circuit considered the

15  issues in *Cornet*, the Customs Court, and the Federal Circuit's predecessor on appeal, had already

16  exercised their jurisdiction over a challenge to those tariffs.  *United States v. Yoshida*, 526 F.2d 560

17  (C.C.P.A. 1975).  If the "regulate importation" language in TWEA meant that the Customs Court had

18  exclusive jurisdiction over those challenges, then the same language in IEEPA means that the Court of

19  International Trade has exclusive jurisdiction over this challenge.

20      Plaintiffs try to skirt *Cornet* and *Yoshida* in the last few pages of their brief, arguing they pre-

21  dated section 1581(i) and that defendants "neglect[ed] to mention" that timeline.  Opp. 23-24; *see id.* at

22  25 n.14 (suggesting that defendants failed to so inform the court in *Webber*).  Plaintiffs' attempted

23  distinction cuts *against* them.  As the Ninth Circuit has recognized, the changes since *Cornet* have

24  "*expanded* the jurisdiction of the CIT beyond that of the earlier Customs Court." *Earth Island Inst. v.*

25  *Christopher*, 6 F.3d 648, 651 (9th Cir. 1993) (emphasis added) (cited at Mot. 11).  The jurisdictional

26  hook in *Cornet* was the previous section 1582, which gave the then-Customs Court exclusive

27  jurisdiction over challenges to the calculation of duties owed and similar administrative decisions by

28  customs officers.  With the creation of the Court of International Trade, Congress retained this

1  jurisdiction in the modern section 1581(a), and it added new bases for jurisdiction, including through

2  section 1581(i).  *See Earth Island Inst.*, 6 F.3d at 651; *see also id.* at 652 (distinguishing cases permitting

3  lawsuits to proceed in district court that were "decided before § 1581(i) expanded the jurisdiction of the

4  CIT").  Thus, the fact that *Cornet* dealt with the former section 1582 (which already provided for

5  "exclusive jurisdiction over a wide range of trade matters," *Earth Island*, 6 F.3d at 651), does not aid

6  plaintiffs:  Congress's later adoption of section 1581(i) only further "expanded" the scope of the Court

7  of International Trade's exclusive jurisdiction.  *Id.*  Far from having "no relevance here," as plaintiffs

8  argue (Opp. 23 n.11), *Earth Island* confirms that, under *Cornet* and *Yoshida*, this case does not belong in

9  district court.  *See Webber*, 2025 WL 1207587, at *5 n.1 (noting, consistent with defendants' briefs, that

10 section 1581(i) expanded the jurisdiction discussed in *Cornet*).

11      Nor would this Court break new ground in transferring the case to the Court of International

12 Trade.  Another district court in the Ninth Circuit has already applied *Cornet*, *Earth Island*, and *Yoshida*

13 to conclude that a case asserting IEEPA and other tariff challenges "*must* be transferred."  *Webber*,

14 2025 WL 1207587, at *5-6 & n.1.  Plaintiffs' attempt to differentiate that case because the plaintiffs

15 there "also challenged tariffs imposed under the Trade Act of 1962," Opp. 25 n.14, is not persuasive.

16 The transferring court did not treat the jurisdictional analysis for the materially indistinguishable IEEPA

17 challenge any differently simply because the plaintiffs there raised a separate challenge to another

18 provision that also falls within the Court of International Trade's jurisdiction.  *Webber*, 2025 WL

19 1207587, at *4-6.

20      **C.    At A Minimum, The Court Of International Trade Should Resolve Any Questions**
21          **About Its Jurisdiction**

22      At the very least, if this Court has any doubt about whether this action falls within the broad

23 jurisdictional grant of 28 U.S.C. § 1581(i), that question should be resolved by the Court of International

24 Trade (and the Federal Circuit in due course), which is intimately familiar with the scope of its own

25 jurisdictional statute.  Ninth Circuit precedent requires courts to resolve any conflicts between district-

26 court jurisdiction and the Court of International Trade's exclusive jurisdiction "by upholding the

27 exclusivity of" the latter.  *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th

28 Cir. 2004).  When there is any question, "the prudent thing to do is . . . to transfer the case to the CIT so

1    that the CIT can determine the question of its own jurisdiction." *Pentax Corp. v. Myrha*, 72 F.3d 708,

2    711 (9th Cir. 1995); *see SCM Corp. v. ITC*, 549 F.2d 812, 821 (D.C. Cir. 1977) ("[W]e believe that the

3    Customs Court itself should be given the opportunity to utilize its own expertise concerning the

4    applicable statutes, and to determine whether or not it has jurisdiction.").

5         Any other rule would defeat the whole point of creating the Court of International Trade and

6    vesting it with exclusive jurisdiction: ensuring "uniformity and consistency" on tariff matters by

7    consolidating them before a court with "an already developed expertise in international trade and tariff

8    matters." *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir. 1994). Allowing

9    or requiring each district court to fully evaluate the merits to determine whether it has jurisdiction would

10   create the precise risk of disagreement and disuniformity on tariff matters that centralization in the Court

11   of International Trade seeks to prevent. *See Orleans Int'l, Inc. v. United States*, 334 F.3d 1375, 1378

12   (Fed. Cir. 2003) (this approach would "negate the intent of Congress in granting *exclusive* jurisdiction

13   over certain matters to the Court of International Trade" (cleaned up)); *Commodities Exp. Co. v. U.S.*

14   *Customs Serv.*, 957 F.2d 223, 227 (6th Cir. 1992) (this approach "would invite the various district and

15   circuit courts to redraw the jurisdictional lines separating the two tribunals"). In other words, plaintiffs'

16   merits-first approach would turn section 1581 into a self-defeating statute, effectively nullifying instead

17   of creating exclusive jurisdiction in the Court of International Trade. *But see, e.g.*, *DHS v. MacLean*,

18   574 U.S. 383, 393 (2015) (rejecting interpretation that would permit agencies to ban whistleblowing,

19   when Congress enacted statute "precisely because it did not trust agencies to regulate whistleblowers");

20   *United States v. Williams*, 553 U.S. 285, 302 (2008) (rejecting a reading of a statute that would "be self-

21   defeating" and "effectively nullify" it). If each district court must decide the merits of a tariff challenge

22   to determine whether it has jurisdiction, the Court of International Trade in effect lacks exclusive

23   jurisdiction. The Court should reject plaintiffs' attempt to end-run the system Congress intentionally

24   created.

25        Plaintiffs, in a footnote, fail to distinguish *Universal Fruits* and *Pentax*. Opp. 10 n.2. Those

26   cases rejected "creative" arguments to avoid the Court of International Trade—efforts to recast recovery

27   of customs duties as a different type of relief—and reiterated that when the Court of International Trade

28   "*may* be able to hear th[e] case," that court, and not the district court, should "determine the question of

1    its own jurisdiction." *Universal Fruits*, 370 F.3d at 836-37 (emphasis added).  Indeed, the Ninth Circuit

2    in *Pentax* "express[ed] no opinion on . . . whether the CIT would have had original jurisdiction if Pentax

3    had originally filed its complaint in that court."  72 F.3d at 711.  The Ninth Circuit concluded that the

4    Court of International Trade should be able to determine that question for itself, *id.*, and this Court

5    should follow the same approach.[3]

6    **II.    Plaintiffs' Inappropriate Discussion Of The Merits Does Not Undermine Transfer**

7        A transfer motion is not the correct vehicle for resolving the ultimate issues in this case.  Indeed,

8    plaintiffs' merits arguments mirror those presently before the Court of International Trade on a

9    summary-judgment motion.  *See V.O.S. Selections, Inc. v. Trump*, No. 25-cv-66, ECF No. 10 (Ct. Int'l

10   Trade Apr. 18, 2025).[4]  Defendants have extensively briefed the merits in that posture.  *See id.*, ECF No.

11   32.  If the Court does nonetheless consider plaintiffs' merits arguments here, defendants highlight some

12   of the main deficiencies with plaintiffs' presentation.  Because neither party has moved on the merits,

13   however, defendants do not attempt an exhaustive response and reserve the right to respond in full at the

14   appropriate time.

15       1.    Plaintiffs principally argue that IEEPA's authorization for the President to "regulate . . .

16   importation," 50 U.S.C. § 1702(a)(1), cannot be read to authorize tariffs.  Opp. 12-16.  On the contrary,

17   tariffs—which set the terms on which foreign goods enter the United States—are a form of "regulation."

18   That is consistent with the definition of "regulate," both now and at the time of IEEPA's enactment.  *See*

19

20

21       [3] Plaintiffs' suggestion (Opp. 9-10 & n.2) that *Hose v. INS*, 180 F.3d 992 (9th Cir. 1999),
     established some novel, and different, standard from *Pentax* is incorrect.  *Hose* concerned an
22   immigration habeas petition asserting claims that were not subject to judicial review, thus making
     transfer unavailable.  180 F.3d at 995-96.  That is not the issue here.  And regardless, the portion of
23   *Hose* that plaintiffs cite relies on a case that *Pentax* post-dates, making their assertion that *Hose*
     supplanted *Pentax* misplaced.  *Id.* at 996 (relying on *Clark v. Busey*, 959 F.2d 808 (9th Cir. 1992)).

24       [4] That court will hold argument on the motion on May 13, 2025, and has invited the plaintiffs in
25   another case challenging IEEPA tariffs to submit their respective position on the merits.  *V.O.S.*, ECF
     No. 13; *Oregon v. Trump*, No. 25-cv-77, ECF No. 10 (Ct. Int'l Trade Apr. 29, 2025).  Those plaintiffs
26   have done so, as well as submitted separate merits briefing of their own.  *See Oregon*, ECF Nos. 14, 15.
     This posture underscores that jurisdiction properly lies with the Court of International Trade, despite
27   plaintiffs' attempt (at Opp. 25) to downplay the significance of those actions being heard in that court,
     and it highlights the risk of inconsistent judgments inevitably invited by plaintiffs' merits-first approach
28   to jurisdiction.

1    *V.O.S.*, ECF No. 32 at 12 (collecting definitions from the present and the late 1970s); *see also Learning*

2    *Resources v. Trump*, No. 1:25-cv-01248, ECF No. 16 (D.D.C. May 1, 2025) (briefing on the merits of

3    IEEPA authority to impose tariffs).  It is consistent with longstanding precedent in the Federal Circuit,

4    where plaintiffs should have filed this case.  *See Yoshida*, 526 F.2d at 576 (holding that the phrase

5    "regulate . . . importation" in IEEPA's predecessor statute permitted the President to "impos[e] an

6    import duty surcharge"); *S. Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (Federal

7    Circuit adopting the body of law of the Court of Customs and Patent Appeals); *V.O.S.*, ECF No. 32 at

8    12-13; *Learning Resources*, ECF No. 16 at 12.  It is consistent with settled precedent that tariffs are a

9    form of "regulation" of commerce.  *See, e.g.*, *Bd. of Trs. of Univ. of Ill. v. United States*, 289 U.S. 48, 58

10   (1933) (it is "well established" that import duties may be imposed "in the exercise of the power to

11   regulate commerce"); *V.O.S.*, ECF No. 32 at 12; *Learning Resources*, ECF No. 16 at 12.  And it is

12   consistent with statutory context, where IEEPA grants the President wide-ranging and overlapping

13   powers over foreign commerce.  *See, e.g.*, 50 U.S.C. § 1702(a)(1)(B) (authorizing the President to

14   "direct and compel," "nullify, void," and "prevent or prohibit" importation and other transactions);

15   *V.O.S.*, ECF No. 32 at 13-14; *Learning Resources*, ECF No. 16 at 13-15.

16          Plaintiffs argue that "[w]here Congress has desired to authorize the President or the Executive

17   Branch to impose or modify tariffs, it has spoken clearly."  Opp. 15.  But Congress need not "incant

18   magic words," like specifying that a statute authorizes "tariffs" in particular, "in order to speak clearly."

19   *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); *see FAA v. Cooper*, 566 U.S. 284, 291

20   (2012) (similar).  Section 232 of the Trade Expansion Act, which plaintiffs never even discuss, proves

21   the point.  There, Congress used similarly broad language ("adjust . . . imports") to authorize the

22   President to impose tariffs, as the Supreme Court held.  19 U.S.C. § 1862(c); *see Fed. Energy Admin. v.*

23   *Algonquin SNG, Inc.*, 426 U.S. 548, 562 (1976) (section 232's "adjust . . . imports" means that "the

24   President's authority extends to the imposition of monetary exactions, i.e., license fees and duties").

25   Plaintiffs provide no explanation for why "regulate . . . importation" can be read to exclude the power to

26   impose tariffs but "adjust . . . imports" cannot.  Contra plaintiffs, a tariff controls importation "as much

27   as a quota," which plaintiffs concede IEEPA authorizes, because both actions have an "initial and direct

28   impact on imports."  *Algonquin*, 426 U.S. at 571; *see Yoshida*, 526 F.2d at 575 n.20 ("it is well

1   established that" the power to "lay duties upon imports" "can be employed in the exercise" of "the

2   power to regulate commerce" (collecting cases)); *id.* at 575 ("to impose duties can be to 'regulate'"); *but*

3   *see* Opp. 13 ("A tariff is not a control on importation . . . . Other than extracting payment, tariffs place

4   no controls on imports[.]").  Rather than tie the President's hands, Congress clearly granted the President

5   flexibility to determine what action to take to address a national emergency, including choosing an

6   import control that "[u]nlike quotas and other forms of action," can "be quickly imposed and removed"

7   and are "administratively less complex." *Yoshida*, 526 F.2d at 580; *see V.O.S.*, ECF No. 16 at 19-20

8   (explaining that the point of emergency powers is to give the President broad and flexible powers);

9   *Learning Resources*, ECF No. 16 at 19-20 (same).

10          Plaintiffs also try to escape *Yoshida*, Opp. 21-22, but its holding is unmistakable: "Congress, in

11   enacting § 5(b) of the TWEA, authorized the President, during an emergency, . . . to 'regulate

12   importation,' by imposing an import duty surcharge or by other means appropriately and reasonably

13   related . . . to the particular nature of the emergency declared." *Yoshida*, 526 F.2d at 576.  "The

14   delegation in § 5(b) is broad and extensive; it could not have been otherwise if the President were to

15   have, within constitutional boundaries, the flexibility required to meet problems surrounding a national

16   emergency with the success desired by Congress." *Id.* at 573.  And although *Yoshida* made the

17   unremarkable statement that "[e]ach Presidential proclamation or action under [the 'regulate

18   importation' language] must be evaluated on its own facts and circumstances," *id.* at 577, plaintiffs go

19   too far in their effort to limit the decision, Opp. 21.  At bottom, *Yoshida* confirmed that language in

20   TWEA materially identical to that in IEEPA gave the President, in times of national emergency, "broad

21   powers" that include the power to impose an import duty surcharge.  526 F.2d at 578.  That *Yoshida*

22   went on to consider whether the President's chosen means were reasonably related to addressing the

23   national emergency, *id.* at 578-80, does not limit the holding that the "regulate importation" language

24   authorizes tariffs, *id.* at 576.  And as explained below, Congress knew of *Yoshida*'s holding that

25   "regulate . . . importation" includes the authority to impose tariffs but kept the key language anyway.[5]

26

27          [5] Plaintiffs briefly suggest that because President Nixon did not cite TWEA to support his action,
    *Yoshida* is irrelevant.  Opp. 19-20.  Not so.  As *Yoshida* explained, "TWEA was not cited in
28   Proclamation 4074 by name (though it [was] incorporated by 'but not limited to') because it would be

2.      Plaintiffs' next argument (Opp. 16-18), that history shows IEEPA does not provide for tariffs, is equally lacking.  Congress borrowed the key language in IEEPA, "regulate . . . importation," verbatim from TWEA, as plaintiffs concede.  *See* Dec. 18, 1941, ch. 593, title III, § 301, 55 Stat. 839 (authorizing the President to "investigate, *regulate*, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, *importation* or exportation of, or dealing in . . ." (emphasis added); Opp. 18.  The Supreme Court, and others, have repeatedly recognized the close relationship between the substantive powers conferred by IEEPA and TWEA.  *See, e.g.*, *Regan v. Wald*, 468 U.S. 222, 227-28 (1984) ("[T]he authorities granted to the President [under] IEEPA are *essentially the same* as those [under] TWEA." (emphasis added)); *Dames & Moore v. Regan*, 453 U.S. 654, 671-72 (1981) ("[W]e think both the legislative history and cases interpreting the TWEA fully sustain the broad authority of the Executive when acting under [IEEPA].");  *Sec. Pac. Nat. Bank v. Gov't & State of Iran*, 513 F. Supp. 864, 875, 877 (C.D. Cal. 1981) (section 1702 of "IEEPA is, except for stylistic changes, a reenactment of the powers previously conferred on the President by § 5(b) of the TWEA").  Congress chose to adopt the same language in IEEPA with full awareness of the *Yoshida* decision interpreting that very language in TWEA to permit the President to impose tariffs, H.R. Rep. No. 95-459, at 5 (1977)—as plaintiffs also concede.  Opp. 23 n.9.[6]  Plaintiffs' assertion that Congress nevertheless "enacted IEEPA as a reform to *limit* presidential authority," *id.* at 18, misunderstands the history and Congress's intent.  Congress made no modification to the relevant language from TWEA, showing that Congress intended to keep the broad Presidential authority from TWEA in IEEPA; when Congress "limit[ed]" the President's substantive authority, it did so only in express exceptions in § 1702(b)—but none of those exceptions involve tariffs.  *See Webber*, 2025 WL

---

inappropriate in a proclamation affecting 'friendly' or 'neutral' nations," but TWEA nonetheless provided the tariff authority for the proclamation.  526 F.2d at 575 n.22.  And Congress knew of and referred to *Yoshida*'s construction of TWEA's language when it enacted IEEPA with materially identical language.  H.R. Rep. No. 95-459, at 5.

[6] Plaintiffs' attempt to brush *Yoshida* off as a stray lower court opinion that Congress cannot be presumed to have adopted, Opp. 23 n.9, fails.  There is no question "Congress knew of" *Yoshida* when it enacted the same language in IEEPA.  *BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1541 (2021); *see also In re Application of the United States*, 460 F. Supp. 2d 448, 456 (S.D.N.Y. 2006) ("Nothing in the legislative history indicates that Congress intended to abrogate the D.C. Circuit's interpretation" in a decision from the year before).

1207587, at *5 (rejecting same argument that the authority granted under IEEPA is "more limited in

scope" than under the TWEA, and transferring case to the Court of International Trade); *V.O.S.*, ECF

No. 32 at 17-19 (explaining that history cuts in favor of reading IEEPA to provide tariff authority);

*Learning Resources*, No. 16 at 16-18 (same).

      **3.**     The Court can also readily reject plaintiffs' invocation of the major-questions doctrine

and constitutional-avoidance doctrine. Opp. 13-15, 18-19, 22; *see V.O.S.*, ECF No. 32 at 12, 21-27

(addressing major-questions and constitutional-avoidance arguments); *Learning Resources*, ECF No. 16

at 20-25 (same). The Supreme Court has only ever applied the major-questions doctrine to statutes

giving authority to an administrative agency, reasoning that agencies lack political accountability. *See*

*West Virginia v. EPA*, 597 U.S. 697, 724 (2022); *see also* Opp. at 13, 14 (altering language in *West*

*Virginia* and *Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014), from the opinions' references to

an "administrative agency" to "the Executive Branch" more broadly). That does not describe IEEPA,

which confers authority on the President, "the most democratic and politically accountable official in

Government." *Seila Law LLC v. CFPB*, 591 U.S. 197, 224 (2020). The major-questions doctrine also

does not apply to national security and foreign policy matters, which are "the prerogative of Congress

and the President." *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017); *see also, e.g.*, *Trump v. Hawaii*,

585 U.S. 667, 686 (2018) (acknowledging "the deference traditionally accorded the President" on these

matters); *Dep't of Navy v. Egan*, 484 U.S. 518, 529-30 (1988) (recounting the "utmost deference to

Presidential responsibilities" that courts have "traditionally shown" in these matters). And it would

conflict with the strong presumption that when Congress uses broad language in a delegation to the

President in the foreign-affairs and national-security context, courts give the statute "a broad

construction." *Florsheim Shoe Co., Div. of Interco v. United States*, 744 F.2d 787, 793 (Fed. Cir. 1984);

*see, e.g.*, *Marshall Field & Co. v. Clark*, 143 U.S. 649, 691 (1892) ("[I]n the judgment of the legislative

branch of the government, it is often desirable, if not essential for the protection of the interests of our

people . . . to invest the [P]resident with large discretion in matters arising out of the execution of

statutes relating to trade and commerce with other nations."). Thus, the challenged orders are reviewed

(if at all) with a deference irreconcilable with the "measure of skepticism" applied to the actions of

administrative agencies. *Utility Air*, 573 U.S. at 324. And far from being a newfound "unheralded

1  power," Opp. 14, the President's imposition of tariffs under IEEPA flows from the same language in

2  TWEA that authorized the imposition of tariffs five decades ago. *Yoshida*, 526 F.2d at 576.

3        Even if the major-questions doctrine applied, the challenged orders would still be supported by

4  "clear congressional authorization." *West Virginia*, 597 U.S. at 723. The major-questions doctrine is

5  not a magic-words requirement and is satisfied when the authorization is couched in clear but broad

6  language. *See Florida v. HHS*, 19 F.4th 1271, 1288 (11th Cir. 2021) (major-questions doctrine did not

7  apply because "a broad grant of authority" that "plainly encompasses the [agency's] actions . . . does not

8  require an indication that specific activities are permitted"); *Biden v. Nebraska*, 600 U.S. 477, 511

9  (2023) (Barrett, J., concurring) (unlike true "clear-statement" rules, major-questions doctrine does not

10  require "an 'unequivocal declaration' from Congress authorizing the precise agency action under

11  review"); *West Virginia*, 597 U.S. at 723 ("something more than a merely *plausible* textual basis for the

12  agency action is necessary" (emphasis added)). That is the case here. As previewed here and explained

13  at length in other briefing, text, history, and context all show that IEEPA clearly authorizes the President

14  to impose tariffs on imports. Indeed, the Ninth Circuit has held the relevant language here to be

15  "*unambiguous*" and to "*clearly* show[] that the President's actions [imposing tariffs] were in accordance

16  with the power Congress delegated." *United States v. Spawr Optical Rsch., Inc.*, 685 F.2d 1076, 1081

17  n.10 (9th Cir. 1982) (emphases added).

18        Plaintiffs' contention that IEEPA must be construed so as not to provide for tariffs, "to avoid the

19  significant constitutional issues that would otherwise arise," Opp. 18-19, fares no better. Plaintiffs assert

20  that if "regulate . . . importation" covers tariffs on imports, then it must also permit tariffs on exports,

21  which the Constitution forbids. *Id.* Defendants have not argued that the verb "regulate" alone

22  authorizes tariffs; instead, the argument is that the *phrase* "regulate . . . importation" authorizes tariffs.

23  The object—here, "importation"—is key. "Regulate" is a transitive verb and "require[s] an object—like

24  an activity, process, or action—to express a complete thought." *TikTok Inc. v. Trump*, 507 F. Supp. 3d

25  92, 103 (D.D.C. 2020); *see, e.g.*, *QBE Syndicate 1036 v. Compass Mins. Louisiana, Inc.*, 95 F.4th 984,

26  995 (5th Cir. 2024) ("The subsequent verbs . . . are clearly transitive and *require* an object to complete

27  the thought."). The same verb paired with different object—say, "exportation"—need not carry the

28  same meaning, contrary to plaintiffs' premise.

1    But even if IEEPA authorizes the President to impose monetary fees on exportation, there is no

2    serious categorical constitutional doubt that requires narrowly construing the phrase "regulate . . .

3    importation."  The federal government can impose fees on exportation through "user fees" or more

4    generally for exports from a U.S. territory.  *See United States v. U.S. Shoe Corp.*, 523 U.S. 360, 363

5    (1998) (although finding the particular tax at issue an impermissible tax on exports, maintaining that

6    user fees on exports are permissible); *Moon v. Freeman*, 379 F.2d 382, 391 (9th Cir. 1967) ("[I]f

7    regulation is the primary purpose of the statute, the mere fact that incidentally revenue is also obtained

8    does not make the imposition a tax, but a sanction imposed for the purpose of making effective the

9    congressional enactment"); *Downes v. Bidwell*, 182 U.S. 244, 278 (1901) (Export Clause does not apply

10   to certain territories); U.S. Const. art. I, § 9, cl. 5 ("No Tax or Duty shall be laid on Articles exported

11   from *any State*." (emphasis added)).  Any interpretive or constitutional questions about the power to

12   "regulate . . . exportation" must be left for a different case that directly presents that issue.  If

13   constitutional avoidance means anything, it means not reaching out to address hypothetical interpretive

14   or constitutional questions not directly presented.  *See Almendarez-Torres v. United States*, 523 U.S.

15   224, 237-39 (1998); *see also Salinas v. United States*, 522 U.S. 52, 60 (1997) (concluding that

16   constitutional avoidance does not apply because "there is no serious doubt about the constitutionality of

17   § 666(a)(1)(B) *as applied to the facts of this case*" (emphasis added)).  That is especially true when, as

18   here, the constitutional objection is limited to the scope of the power to impose fees on exports, not a

19   categorical constitutional objection that would doom the entire statute.  And in any event, constitutional

20   avoidance applies "only when, after the application of ordinary textual analysis, the statute is found to be

21   susceptible of more than one construction." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).  But text,

22   context, history, and purpose show that the best reading of IEEPA is that it authorizes the President to

23   impose tariffs on imports; plaintiffs' reading is "plainly contrary to the intent of Congress" and cannot

24   be adopted.  *Miller v. French*, 530 U.S. 327, 341 (2000).

25        Lastly, there is no nondelegation concern here, so the constitutional-avoidance doctrine does not

26   apply based on nondelegation concerns, either.  Opp. at 19; *see V.O.S.*, ECF No. 32 at 25-39; *Learning

27   Resources*, ECF No. 32 at 27-32.  "[E]very Circuit to have considered the issue" of whether IEEPA

28   "runs afoul of the nondelegation doctrine"—including the Ninth Circuit—has concluded that it does not.

*United States v. Shih*, 73 F.4th 1077, 1092 (9th Cir. 2023) (collecting cases); *see Yoshida*, 526 F.2d at 581 (upholding substantively identical language in the TWEA against a nondelegation challenge); *V.O.S.*, ECF No. 32 at 27-32.  The "intelligible principles" guiding the President's discretion under IEEPA are at least the same as those *Yoshida* identified as lawful—a limitation to actions consistent with the national emergency purpose and applying only to property in which there is a foreign interest. 526 F.2d at 581.  If anything, IEEPA has even more procedural limitations than the TWEA, such as congressional consultation, reporting, and termination of declared emergencies, that provide further intelligible principles guarding against a nondelegation problem.  *Shih*, 73 F.4th at 1092; *see United States v. Amirnazmi*, 645 F.3d 564, 577 (3d Cir. 2011) (cited in *Shih* for the conclusion that IEEPA strikes the necessary "careful balance").

That there is no nondelegation concern here is further confirmed by the fact that the Ninth Circuit rejected a nondelegation challenge to the use of IEEPA to "define criminal conduct," an area where courts assume a *higher* nondelegation standard applies.  *See Shih*, 73 F.4th at 1092 (relying on *Touby v. United States*, 500 U.S. 160, 166 (1991), which assumed, without deciding, that "greater congressional specificity is required in the criminal context" for nondelegation purposes).  Doubly so because IEEPA involves an area where the President has independent authority—national security and foreign affairs—making the intelligible-principle standard even easier to meet.  *See, e.g.*, *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936); *United States v. Mazurie*, 419 U.S. 544, 556-57 (1975).

1

## CONCLUSION

2          For these reasons, defendants respectfully request that the Court transfer this action in its entirety

3    to the Court of International Trade.

4

5    DATED: May 8, 2025                          Respectfully submitted,

6    OF COUNSEL:                                 YAAKOV M. ROTH
                                                 Acting Assistant Attorney General
7
     ALEXANDER K. HAAS                           ERIC J. HAMILTON
8    Director                                    Deputy Assistant Attorney General

9    STEPHEN M. ELLIOTT                          PATRICIA M. McCARTHY
     Assistant Director                          Director
10   U.S. Department of Justice
     Civil Division                              *s/Claudia Burke*
11   Federal Programs Branch                     CLAUDIA BURKE
                                                 Deputy Director
12   SOSUN BAE
     Senior Trial Counsel                        *s/Justin R. Miller*
13   BLAKE W. COWMAN                             JUSTIN R. MILLER
     CATHERINE M. YANG                           Attorney-In-Charge
14   COLLIN T. MATHIAS                           International Trade Field Office
     Trial Attorney
15   U.S. Department of Justice
     Civil Division
16   Commercial Litigation Branch                *s/Luke Mathers*
                                                 LUKE MATHERS
17   PATRICK ROBBINS                             Trial Attorney
     Acting United States Attorney               U.S. Department of Justice
18   PAMELA JOHANN                               Civil Division
     Assistant United States Attorney            26 Federal Plaza, Room 346
19   Chief, Civil Division                       New York, New York 10278
     450 Golden Gate Avenue                      (212) 264-9236
20   P.O. Box 36066                              luke.mathers@usdoj.gov
     San Francisco, California 94102
21   (415) 436-7025
                                                 Attorneys for Defendants
22

23

24

25

26

27

28